FILED
United States Court of Appeals
Tenth Circuit

April 25, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DUSTIN DIMMICK,

     Plaintiff - Appellant,

v.

KRISTIE BOURDON, a/k/a Kristie
Montrois; ERIC PETERSON; CLARK A.
HARMS; ANGELA MICKLOS; CURTIS
L. GARNER; JESSE GALLEGOS;
ROBERT S. YEATES; MANNY
GARCIA,

     Defendants - Appellees.

No. 18-4051
(D.C. No. 2:13-CV-00794-RJS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

Dustin Dimmick filed this pro se civil rights suit under 42 U.S.C. § 1983

against various officials connected with the revocation of his parole. The district

court dismissed the action. It determined Dimmick had challenged the fact or

duration of his confinement and should therefore have brought the action as a petition

---

[*]     After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist in the
determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The
case is therefore ordered submitted without oral argument. This order and judgment
is not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for a writ of habeas corpus under 28 U.S.C. § 2241 instead of a § 1983 civil rights suit. Dimmick appeals the dismissal. We affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

Dimmick is serving a one-to-fifteen year prison sentence, set to expire in December 2020. In January 2009 he was placed on parole. While on parole, he was charged with parole violations. He received an evidentiary hearing concerning the alleged violations. During that hearing, evidence was presented that he had committed a sexual assault.

After the hearing, the Utah Board of Pardons and Parole (Board) found Dimmick guilty of two offenses (violation of a no-contact order and rape/domestic violence) and it accepted his guilty plea to a third (consumption of alcohol). As a result of these violations, the Board revoked his parole. In its revocation order, the Board encouraged Dimmick to seek sex offender treatment. In a later rehearing order, it indicated it would consider him for earlier release if he successfully completed a sex offender treatment program.

At the Utah State Prison, where Dimmick was re-incarcerated, the Board's recommendations had serious consequences. Prison authorities prepared a "Case Action Plan" whose "Priority 1" was to deal with Dimmick's new status as a sex offender. R., Vol. I at 465. He was assigned a goal of "[e]liminat[ing] sexually deviant behavior" by "[s]uccessfully complet[ing] a residential Sex Offender Treatment Program." *Id.* Failure to comply with this directive, according to

2

Dimmick, entails severe adverse consequences in terms of his prison classification and privileges.

Dimmick strenuously objected to the Board's finding that he committed a rape, its recommendation of sex offender treatment, and the conditioning of his consideration for early release on his completion of a sex offender treatment program. Seeking relief from these findings and their consequences, he filed this suit.

In his amended civil rights complaint, Dimmick stated that he wanted to be "left alone" to finish his prison sentence but he vowed he would "continue to fight" his designation as a "convicted sex offender." *Id.* at 145. He complained of alleged violations of due process in connection with the evidentiary hearing and revocation of his parole. Ultimately, he requested three forms of relief: (1) removal from the public record of any and all mention of the Board's finding of guilt; (2) modification of his treatment or classification requirements (which he referred to as "mapping") to reflect only his offenses of conviction, rather than a designation as a sex offender; and (3) a new hearing before the Board, without the rape charge.[1]

In district court, the parties briefed the merits of Dimmick's claims, focusing on whether the Board's proceedings had violated his constitutional rights. Both

---

[1]     In a later pleading Dimmick denied he was challenging the revocation of his parole and stated he did "not want, and [was] not willing to take a 'Parole.'" R., Vol. I at 445. But he also complained that the Board's findings made him ineligible for parole without completing sex offender treatment. *See id.* at 453.

3

parties filed motions for summary judgment relating to these issues. Notably, in their motion, the defendants did not argue that Dimmick's use of a § 1983 action to pursue his claims was inappropriate.[2]

The district court did not rule on these summary-judgment motions. Instead, it denied them as moot. Acting *sua sponte*, it entered a brief order dismissing Dimmick's complaint on the grounds that he brought it as a civil-rights complaint under § 1983 rather than a habeas petition under § 2241. The district court reasoned that Dimmick "essentially want[ed] the [Board's] decision overturned" and was therefore "challenging the fact or duration of his confinement." R., Vol. I at 490-91 (brackets and internal quotation marks omitted). Such a challenge, it stated, could only be sought through a writ of habeas corpus.

## DISCUSSION

"The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (internal quotation marks omitted). "In this circuit, a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a shortened period of confinement, must do so through an

---

[2] In their summary-judgment memorandum defendants included a general assertion that prisoners who seek to call into question the fact or duration of parole or probation must pursue a successful action for habeas corpus. Aplt. App., Vol. I at 356. But they did not argue that Dimmick should not have used a § 1983 action to obtain the relief he sought or that he was required to pursue his claims through a § 2241 petition.

4

application for habeas corpus. In contrast, a prisoner who challenges the conditions of his confinement must do so through a civil rights action." *Id.* (citation omitted).

To the extent Dimmick's complaint can be read to seek nullification of the parole board's revocation decision in order to obtain his return to parole, we agree with the district court that his proper remedy is a habeas action under § 2241. *See id.* at 1037 n.2 ("This court's precedents . . . indicate the types of claims cognizable under § 2241 are those in which an individual seeks either immediate release from, or a shortened period of, physical imprisonment, i.e., placement on parole or in a parole-like custodial setting . . . ."). We therefore affirm this aspect of the district court's dismissal.

But Dimmick's request for a new parole revocation hearing poses a more nuanced procedural issue, given the rape charge and the procedures concerning that charge that allegedly denied him due process. The defendants cite *Herrera v. Harkins*, 949 F.2d 1096 (10th Cir. 1991), in which we held that "[t]o challenge a constitutional defect in an individual parole hearing, where the remedy lies in providing a new parole hearing, a prisoner must file a habeas petition." *Id.* at 1097. But more recent Tenth Circuit cases generally follow the analysis prescribed in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), as will we.

In *Wilkinson*, a petitioner challenged the use of parole procedures that he alleged violated the Constitution's *Ex Post Facto* and Due Process Clauses. *See id.* at 77. He sought "a new parole hearing conducted under constitutionally proper procedures." *Id.* After surveying at length its jurisprudence concerning the interplay

between § 1983 and habeas proceedings, the Supreme Court held that the prisoner, who sought "a new parole hearing at which . . . parole authorities may, in their discretion, decline to shorten his prison term," had properly proceeded under § 1983 rather than through a habeas petition. *Id.* at 82.  The Court reasoned that granting a new hearing at which the parole board would exercise its discretion would constitute neither an order for the prisoner's "immediate or speedier release into the community," nor would it "necessarily demonstrate the invalidity of [his] confinement or its duration." *Id.*  The relief he sought therefore fell within the scope of § 1983 rather than habeas.

Two examples illustrate how we have applied *Wilkinson* to parole-related claims.[3]  In *Conkleton v. Raemisch*, 603 F. App'x 713 (10th Cir. 2015), we held that an inmate could not use a § 1983 action to seek to invalidate the denial of parole. *See id.* at 716.  But we explained that he could bring a § 1983 claim against prison officials based on their failure to certify that he had met the sex-offender treatment criteria for a favorable parole recommendation, because "as in . . . *Wilkinson* . . . this claim is not barred . . . because success on this claim would not necessarily entitle Plaintiff to immediate or speedier release." *Id.*

In *Ellibee v. Feleciano*, 374 F. App'x 789 (10th Cir. 2010), an inmate whose parole application had been denied filed a combined complaint under § 1983 and

---

[3] Although not precedential, we find the reasoning of these unpublished decisions to be instructive.  *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

§ 2241. We determined, citing *Wilkinson*, that he could proceed under § 1983 to the extent that "success on [his] civil-rights claims would mean at most a new eligibility review, which at most will speed consideration of a new parole application." *Id.* at 791 (emphasis, brackets, and internal quotation marks omitted). We thus reversed the district court's denial of his claim "that the parole board retaliated against him because of his litigation activities on behalf of himself and other prisoners," and we remanded for further proceedings concerning that § 1983 claim. *Id.* at 792.

Similar principles apply here. As we understand it, Dimmick's goal in seeking a new parole revocation hearing is not so much to obtain earlier release but to obtain a new decision from the parole board that does not stigmatize him as a rapist or sex offender. But even if he seeks a new parole revocation hearing in the hope of eventually being returned to parole, *Wilkinson* indicates he may pursue a claim under § 1983 so long as the Board retains discretion to grant or deny release as a result of any such hearing (and there is no indication that it does not). *See* Utah Code Ann. § 77-27-11(6)(a) ("Parolees found to have violated the conditions of parole may, at the discretion of the board, be returned to parole, have restitution ordered, or be imprisoned again as determined by the board, not to exceed the maximum term, or be subject to any other conditions the board may impose within its discretion."). We therefore reverse the district court's dismissal of this aspect of Dimmick's complaint.

In addition, Dimmick challenges the effects of the Board's decisions on aspects of his incarceration (and his life) that do not concern his placement on parole or release. He complains of the stigma associated with being classified as a sex

7

offender and the obligation to participate in sex offender treatment programs. Whatever the merits of these claims, they may be pursued in § 1983 proceedings rather than a habeas petition. *See Brown v. Montoya*, 662 F.3d 1152, 1167-68 (10th Cir. 2011) (entertaining appeal from denial of qualified immunity in § 1983 action brought by probationer alleging he was wrongfully directed by probation officer to register as a sex offender and wrongfully placed in the sex offender probation unit); *Gwinn v. Awmiller*, 354 F.3d 1211, 1217-24 (10th Cir. 2004) (addressing sex-offender registration/classification claims brought in § 1983 action).

## CONCLUSION

We affirm in part and reverse in part the district court's order dismissing Dimmick's complaint, and remand for further proceedings in accord with this order and judgment. We grant Dimmick's motion to proceed in forma pauperis, and remind him that he is obligated to continue making partial payments until the entire fee has been paid in full.

Entered for the Court

Nancy L. Moritz
Circuit Judge